**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PEGGY FEASTER, individually
and on behalf of all others similarly
situated,

     Plaintiff,

v.

ELECTROLUX CONSUMER
PRODUCTS, INC.,

     Defendants.

CASE NO.: 8:25-cv-00910-WFJ-NHA

---

**ELECTROLUX CONSUMER PRODUCTS, INC.'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

Defendant Electrolux Consumer Products, Inc. ("Electrolux"), hereby moves to dismiss Plaintiff's Complaint (ECF No. 1) in its entirety under Federal Rule of Civil Procedure 12(b)(6).

Plaintiff's  implied warranty claims fail because her allegations focus on an event that occurred outside of the implied warranty period, and for lack of privity. Plaintiff's  fraudulent-omission and Florida Deceptive and Unfair Trade Practices Act claims fail because she does not allege the requisite elements with particularity. Finally, Plaintiff's requests for declaratory and injunctive relief fail because she

cannot show that she is likely to suffer future harm. The Court should dismiss the Complaint with prejudice.

## **<u>INTRODUCTION</u>**

In 2022, Plaintiff Peggy Feaster bought a Frigidaire oven with a front door panel containing glass. Two years later, Plaintiff alleges the oven door glass broke. She was not injured, and she did not contact Electrolux, the oven's manufacturer, to seek warranty relief. Instead, Plaintiff brought this action, alleging that by selling the oven without disclosing that the glass could break, Electrolux breached the implied warranty of merchantability, committed fraud, and was unjustly enriched.

Plaintiff's Complaint should be dismissed in its entirety for several reasons. First, when Plaintiff purchased her oven from Home Depot, she agreed to limit claims based on implied warranties to one year—so she cannot, as she tries to do here, bring implied warranty claims for events outside that period. She also cannot bring those claims because she lacks privity with Electrolux. Plaintiff's fraud claims fare no better because she fails to adequately plead a "Defect," concealment, a duty to disclose, or causation, much less with the particularity required by Rule 9(b). Plaintiff's (duplicative) unjust enrichment claim fails because that equitable remedy is inappropriate where a remedy at law exists. And finally, Plaintiff's "claim" for declaratory relief must also be dismissed because she fails to allege anything more than a conjectural, remote risk of future injury.

## FACTUAL ALLEGATIONS

### Plaintiff's Experience with Her Range

Plaintiff alleges she bought a Frigidaire 30" Electric Range, model number FFEF3054TD, from a Home Depot Store in St. Petersburg, Florida in July 2022. (Compl. ¶ 47.) She paid $798.00, plus tax. (*Id.*) She used the range to cook food for two and a half years without incident. (*Id.* ¶¶ 53, 55.)

In November 2024, Plaintiff alleges the glass door on her range shattered when she stepped away from the kitchen. (*Id.* ¶ 55.) Plaintiff alleges that when that incident occurred, she discovered the range she purchased had a "Defect." (*Id.* ¶ 1.) In her words, the "Defect" is that the oven glass had a "propensity" to "explode spontaneously and without external impact or misuse." (*Id.*) And that "propensity" was allegedly caused, on information and belief, by "Nickel Sulphide inclusion in the glass." (*Id.*)

### Plaintiff's Warranty

Plaintiff acknowledges that her range came with a Use and Care Manual. (*Id.* ¶¶ 37–38, 51, 90).[1] Recognizing that "[m]ost oven doors contain glass that can break," that Use and Care Manual warns consumers:

---

[1] "In analyzing the sufficiency of the complaint," the Court can consider "documents central to or referenced" therein. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The Use and Care Manual, which contains the warranties Plaintiff argues are "unconscionable," is such a document.

> Do not hit the glass with pots, pans, or any other object. Scratching, hitting, jarring, or stressing the glass may weaken its structure, causing an increased risk of breakage at a later time. Do not close the oven door until all of the oven racks are fully in place.

(*See* Ex. 1, Use and Care Manual, at 37.)

The Use and Care Manual also contains a limited one-year express warranty, which provides that "[f]or one year" from Plaintiff's original purchase, Electrolux "will pay all costs for repairing or replacing any parts … that prove to be defective in materials or workmanship." (*Id.* at 44.) It limits "claims based on implied warranties" to the same one-year period. (*Id.*) The Use and Care Manual also provides that if the product needs servicing, consumers should "contact[] Electrolux" at contact information provided. (*Id.*)

Plaintiff alleges that she attempted to comply with that instruction, i.e., she "contacted Electrolux to inquire about replacing the oven," but she ended the phone call before speaking with a customer service representative because "the wait time was unreasonably long." (Compl. ¶ 56.)

**<u>Others' Experiences</u>**

Plaintiff alleges she is not alone in her experience. Specifically, Plaintiff alleges that, "consumers have left complaints … on Electrolux's own website for its products." (*Id.* ¶¶ 62–85.) Plaintiff provides a "sampling" of online reviews,

including reviews for four different models.[2] The dates of manufacture are unknown, but the reviews were posted between one and five years ago. (*Id.*) The following table summarizes those reviews:[3]

| Model | No. of Reviews Cited | No. Posted *after* Pls.' Purchase | Total No. of Reviews on Website | % of Total (all reviews) |
|---|---|---|---|---|
| FCRE305LAF | 2 | 1 | 2,979 | 0.067% |
| FFEF3016VS | 1 | 1 | 1,589 | 0.063% |
| FFEF3054TS | 14 | 7 | 6,541 | 0.214% |
| LFEF3054TF | 1 | 1 | 2,692 | 0.037% |
| **Total** | **18** | **10** | **13,801** | **0.130%** |

Overall, the reviews Plaintiff cites make up just 0.1% of the total customer reviews on the website, and an even tinier percentage of the *millions* of ranges Electrolux manufactured and sold since 2011, when the reviews begin. The remaining reviews are positive, with an average "star" rating of 4.5 out of 5 stars. (*See generally* Frigidaire.com.)

Plaintiff also alleges that "since 2011," "more than 320 complaints from consumers [have been] filed with the" Consumer Product Safety Commission, or CPSC—a rate of roughly 23 complaints per year, across millions of products sold.

---

[2] It also includes one review that omits the model number.

[3] Much like Plaintiff's warranty, the posted complaints are "central to" her Complaint. Therefore, they—in their full context—are fairly incorporated into the Complaint. *La Grasta*, 358 F.3d at 845.

(*Id.* ¶ 62.) Again, Plaintiff selectively provides a sampling of "complaints," citing 23 complaints about more than 20 different models.[4]

**Plaintiff's Claims**

Based on the foregoing, Plaintiff alleges several claims. First, she alleges that Electrolux breached the implied warranty of merchantability by selling ranges that are "not fit for their ordinary purpose," and in doing so, violated the Magnuson-Moss Warranty Act. (*Id.* ¶¶ 127, 142, 190.) Second, she alleges that Electrolux "omitted and concealed that the Ovens ... are constructed with … glass … which could break," and so committed common-law fraudulent omission (*id.* ¶¶ 100, 159, 166); violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (*id.* ¶ 174); and was unjustly enriched (*id.* ¶ 150). And third, she seeks declaratory relief, in the form of a ruling that "[t]he [o]vens have defects" and "[a]ny limitation of consumer rights in [her] warranty is void." (*Id.* ¶ 197.)

Plaintiff's theory of harm is that she and every other consumer in the putative Florida class overpaid for a range because Electrolux "concealed" the alleged "Defect." (*Id.* ¶¶ 46, 59, 106.)

---

[4] Of those 23 complaints, three mention injuries: two individuals cut themselves while cleaning, and one "had a heart episode" because of the surprise. (Compl. ¶¶ 81, 83, 76.)

# LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. It requires that a plaintiff plead sufficient "factual content," not mere conclusions. *Id*. And, if there is an "obvious alternative explanation" for the facts alleged that conflicts with the plaintiff's theory of liability, the complaint must be dismissed. *Id*. at 682.

# ARGUMENT

## I.    PLAINTIFF'S IMPLIED-WARRANTY CLAIMS ALL FAIL

### A.    Plaintiff's three implied-warranty claims should be dismissed because the warranty period has lapsed

Plaintiff brings three separate claims for breach of the implied warranty of merchantability: Count I, presumably based on common law; Count II, under the Magnuson-Moss Warranty Act ("MMWA"); and Count VI, under sections 672.314 and 680.212 of the Florida Statutes, which incorporate the Uniform Commercial Code.[5] The essential elements of the claim are similar. *See Jovine v. Abbott Lab'ys,*

---

[5] Section 680.212 governs the implied warranty of merchantability in the formation and construction of leases. Fla. Stat. § 680.212(2) (referencing "the lease agreement"). Because this case does not involve a lease, it does not apply here.

*Inc.*, 795 F. Supp. 2d 1331, 1340 (S.D. Fla. 2011) (common law definition); Fla. Stat. § 672.314 ("merchantable" goods are "fit for the ordinary purposes for which such goods are used"); 15 U.S.C. § 2310(d)(1) (an implied warranty "arise[s] under State law").

As a threshold matter, Count I should be dismissed because warranties for "movable" goods, like those here, are governed by the UCC. *See Toca v. Tutco*, 430 F. Supp. 3d 1313, 1322 (S.D. Fla. 2020). But the Court should dismiss all three implied-warranty claims because the parties validly limited the implied warranty period to one year, and the alleged "Defect" manifested outside that period. Parties can "modify the implied warranty of merchantability" if the modification "mention[s] merchantability" and is "conspicuous." Fla. Stat. § 672.316(2). The Use and Care Manual reads:

> DISCLAIMER OF IMPLIED WARRANTIES…
>
> … CLAIMS BASED ON IMPLIED WARRANTIES, **INCLUDING WARRANTIES OF MERCHANT-ABILITY** … , **ARE LIMITED TO ONE YEAR** OR THE SHORTEST PERIOD ALLOWED BY LAW, BUT NOT LESS THAN ONE YEAR.

(Ex. 1, at 44 (emphasis added).) Because this language explicitly "mentions merchantability," is capitalized, and falls under a large "WARRANTY" header, it is glaringly "conspicuous." Fla. Stat. § 672.316(2). Thus, the Use and Care Guide validly limits the implied warranty to one year.

As several courts, in this Circuit and others, have recognized, where the parties validly limit the warranty period to one year, the defect must manifest within that period. *See Fisher v. Harley-Davidson Motor Grp., LLC*, No. 2:19-CV-14154-ROSENBERG/MAYNARD, 2019 WL 8014364, at *5 (S.D. Fla. Oct. 18, 2019) (dismissing implied-warranty claim where plaintiff did "not allege that a defect manifested during the warranty period"); *PFM Air, Inc. v. Dr. Ing. hc. F. Porsche A.G.*, No. 8:08-CV-392-T-17MAP, 2011 WL 254724, at *7 (M.D. Fla. Jan. 26, 2011) (same). For example, in a case involving similar allegations, but against a different manufacturer, a district court dismissed the plaintiffs' implied-warranty claim because the manufacturer "properly limited the implied warranties to one year," using similar language to the language in this case. *Haft v. Haier US Appliance Sols., Inc.*, 578 F. Supp. 3d 436, 449–50 (S.D.N.Y. 2022).

Plaintiff's implied warranty period expired in July of 2023, one year after Plaintiff made her purchase. (Compl. ¶ 47.) Because the incident of which Plaintiff complains occurred after that period, her implied-warranty claims must be dismissed. *See, e.g.*, *Haft*, 578 F. Supp. 3d at 450.

## B.    The limitation on the implied warranty period is not unconscionable

Plaintiff attempts to circumvent the limit on implied-warranty claims by alleging the express one-year limited warranty is "unconscionable." (Compl. ¶ 92.)

Under the MMWA, implied warranties "may be limited in duration to the duration of a written warranty … if such limitation is conscionable." 15 U.S.C. § 2308.  Plaintiff, however, fails to plausibly allege that the express warranty's one-year limit is unconscionable.

Under Florida law, "[a] contract or clause is unconscionable when it is both procedurally and substantively unconscionable." *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686-CIV, 2013 WL 6328734, at *3 (S.D. Fla. Dec. 5, 2013). A contract may be procedurally unconscionable "if the circumstances surrounding a transaction indicate that the complaining party had *no meaningful choice* at the time of contracting." *Id.* at *3 (emphasis added) (citing *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. Dist. Ct. App. 2003)). And it may be substantively unconscionable if its provisions are "so 'outrageously unfair' as to 'shock the judicial conscience.'" *Id.* (quotation omitted).

Neither condition is met here. First, Plaintiff's allegations that Electrolux had "superior knowledge of the alleged Defect" fail to establish procedural unconscionability. (Compl. ¶ 92.a, b, f, g, j, k, l.) Florida law is clear that unconscionability "requires more than a defendant's mere knowledge of a defect at the time of sale." *Licul*, 2013 WL 6328734 at *3; *see also McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1358 (N.D. Ga. 2013). For Plaintiff's theory to make sense, what is required is not just knowledge of a latent defect, but knowledge that the latent defect will

manifest *outside the warranty period*. Plaintiff fails to plead that knowledge, because none of the reviews she cites state when the product was manufactured or whether the product failed within one year. (*See* Compl. ¶¶ 62–85.) So, Plaintiff's (conclusory) allegation that Electrolux "had superior knowledge," without more, does not establish procedural unconscionability.[6]

Second, Plaintiff's allegations that she had "no ability to negotiate" or "no meaningful choice" in the terms of the warranty or "in choosing another brand of oven" are also insufficient to establish procedural unconscionability. (Compl. ¶ 92.c-e, m.) For one thing, those allegations are conclusory recitations of the elements of unconscionability. For another, Plaintiff's allegation that "any other reputable brand" would have warranties with "the same or similar terms and limitations" does not support a plausible inference that she lacked choice—instead, it supports the inference that she had many enforceable contracts to choose from. Courts routinely enforce one-year warranties—including limitations on the implied warranty of merchantability. *Fisher*, 2019 WL 8014364 at *5 (enforcing a one-year limited warranty, because limiting the implied warranty of merchantability "is permitted under the

---

[6] In any event, Plaintiff's allegations do not support a plausible inference of pre-sale knowledge because they are not sufficiently "unusual [in] number." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1223 (S.D. Fla. 2021) (quotation omitted). There is no "hard-and-fast rule on how many consumer complaints" are required to plead knowledge, but they must be "more than a blip on [d]efendant's radar." *Id.* at 1244 (quotation and quotation marks omitted). 0.1% of all reviews posted (and an even smaller percentage of all ovens sold) is not.

[MMWA] and under Florida law"); *see also Kelly v. Lee Cnty. RV Sales Co.*, 819 F. App'x. 713, 718 (11th Cir. 2020) (same); *Speier-Roche v. Volkswagen Grp. of Am., Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *4 (S.D. Fla. Apr. 30, 2014) (same); *Haft*, 578 F. Supp. 3d at 450. It is not plausible that Plaintiff lacked bargaining power because she had to choose between products offering such warranties. *Iqbal*, 556 U.S. at 662.

For similar reasons, Plaintiff fails to allege that the express warranty is substantively unconscionable, i.e., "so 'outrageously unfair' as to 'shock the judicial conscience.'" *Licul*, 2013 WL 6328734 at *3 (quotation omitted). Her allegations that the warranty is "inadequate to protect" her or "unreasonably favor[s]" Electrolux do not rise to that level. (Compl. ¶ 92.i, m.) And limitations that are "common in the industry" and "routinely enforced" do not "shock the judicial conscience." *Licul*, 2013 WL 6328734 at *3.

In short, Plaintiff's conclusory allegations (*see* Compl. ¶ 92) do not support a plausible inference that the one-year express warranty was unconscionable. The Court should apply its terms and dismiss the implied-warranty claims.

### C.    The implied-warranty claim also fails for lack of privity

"Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." *Mesa v. BMW of North Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005); *see David v. Am. Suzuki Motor Corp.*,

629 F. Supp. 2d 1309, 1324 (S.D. Fla. 2009). And where a buyer purchases a good from a seller that is not the manufacturer, there is no privity between the buyer and the manufacturer. *See Ocana v. Ford Motor Co.*, 992 So. 2d 319, 325 (Fla. Dist. Ct. App. 2008). Here, Plaintiff admits that she bought her range from Home Depot, not Electrolux. (Compl. ¶ 47.) So, she lacks privity with Electrolux. *Mesa*, 904 So. 2d at 458.

Sister courts recently applied that privity requirement in cases involving allegedly defective, and unsafe, HVAC systems. *See Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1326 (S.D. Fla. 2020); *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1197 (S.D. Fla. 2017). In *Toca*, the manufacturer provided "warranty certificates" directly to the plaintiff, and the plaintiff argued those certificates created privity. *Toca*, 430 F. Supp. 3d. at 1326. The *Toca* court explained that Florida courts have recognized only two exceptions to the privity requirement: either where there is "direct contact" between the manufacturer and the buyer, or where the plaintiff is a third-party beneficiary of a contract between the manufacturer and the seller. The *Toca* plaintiff's allegations about "warranty certificates" did not suffice to trigger the direct-contact exception because that exception requires "a much stronger tie between the purchaser-plaintiff and the manufacturer" in the form of "actual one-on-one communication." *Id.* at 1326. Nor were they sufficient to trigger the third-party beneficiary exception. *Id.* Because the plaintiff had purchased the HVAC system from a third

party, he lacked privity with the manufacturer and could not bring an implied warranty claim. *Id.* A court in this District recently adopted *Toca*'s reasoning, and further clarified that the "third-party beneficiary" exception requires contact between the plaintiff and the manufacturer's *agent. Peeples v. Omega Flex, Inc.*, No. 3:20-cv-5-J-34JRK, 2020 WL 4928164, at *6–7 (M.D. Fla. July 31, 2020).

Plaintiff fails to allege either exception to the privity requirement, and that failure is fatal to her implied warranty claims. *Toca*, 430 F. Supp. 3d. at 1326.

## II. ELECTROLUX DID NOT CONCEAL THE COMMONLY-UNDERSTOOD FACT THAT GLASS MAY BREAK

### A. Electrolux did not "conceal" a "defect"

Plaintiff also brings Count IV, for "fraudulent omission or concealment," and Count V, for violation of the FDUTPA (*see* Compl. ¶¶ 154–166, 167–183). Plaintiff explicitly disavows that she is basing any claim on an affirmative misrepresentation. (*Id.* ¶ 24.) Instead, Counts IV and V rest on her theory that Electrolux "concealed the Defect." (*Id.* ¶¶ 1, 158, 173–74.)

Although the elements of a fraudulent concealment and a FDUTPA claim differ, there is significant overlap between the two. Both are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, under which "the circumstances constituting [the] fraud" must be stated with "particularity." Fed. R. Civ. P. 9(b); *Ziemba v. Cascade Intern., Inc.*, 256 F. 3d 1194, 1202 (11th Cir. 2001); *DJ*

*Lincoln Enters., Inc. v. Google LLC*, No. 21-12894, 2022 WL 203365, at *3 (11th Cir. Jan. 24, 2022) (affirming dismissal of FDUTPA claim for failure to comply with Rule 9(b)). And, just as fraudulent concealment, when based on an omissions theory, requires "suppression of truth by the defendant," *Hummel v. Tamko Bldg. Prods., Inc.*, No. 6:15:cv-910-Orl-40GJK, 2015 WL 12843907, at *4 (M.D. Fla. Nov. 6, 2015), so too a FDUTPA claim requires "a deceptive or unfair practice," such as an omission that is likely to mislead the consumer. *Fickes v. Volkswagen Grp. of Am., Inc.*, No. 6:11-cv-1614-Orl-22DAB, 2012 WL 13103180, at *2 (M.D. Fla. May 2, 2012). Here, Plaintiff's omission-based claims are based on her theory that Electrolux "concealed the Defect." They fail because she does not allege that theory plausibly and with particularity.

First, Plaintiff's allegations that Electrolux "concealed the Defect" are insufficient because her "Defect" theory is implausible. Under *Iqbal*, a plaintiff's allegations of every element of a claim must be "plausible"—that is, more than "mere[ly] possib[le]" or "conceivable"—based on the court's own "experience and common sense." *Iqbal*, 556 U.S. at 679–80. Here, Plaintiff alleges Electrolux concealed "the Defect," which she defines as the "glass window[s'] … propensity to explode spontaneously and without external impact or misuse by the consumer." (*Id*. ¶¶ 1, 158, 173–74.) But Plaintiff's theory that the glass has a "propensity to explode spontaneously" is belied by her own allegations. Plaintiff's citations demonstrate that

consumers reported glass breaking in roughly 0.1% of all posted consumer re-
views—and, logically, in a far lower percentage of all the products sold. Something
that occurs less than a quarter of a percent of the time is not a "propensity." *Propen-
sity*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/pro-
pensity (last visited June 9, 2025) (defining propensity as "an often intense natural
inclination"). Instead, common sense dictates that the "more likely" explanation for
Plaintiff's experience is that, whatever its cause, it was highly unusual, not some-
thing commonly experienced as one would expect from an inherent defect. *Iqbal*,
556 U.S. at 681.

Second, Plaintiff's generalized allegations that Electrolux "concealed" any-
thing do not satisfy Rule 9(b). Since Plaintiff relies on an omission theory (Compl.
¶ 24), she must allege *how* the alleged concealment occurred. Simply alleging Elec-
trolux "concealed" is not enough. *See Koski*, 347 F. Supp. 3d at 1197 (fraudulent
concealment); *Hummel*, 2015 WL 12843907, at *3 (FDUTPA); *Fickes v.
Volkswagen Grp. of Am., Inc.*, No. 6:11-cv-1614-Orl-22DAB, 2012 WL 13103180,
at *2 (M.D. Fla. May 2, 2012) (FDUTPA). For example, in *Koski*, the plaintiffs al-
leged that the defendant HVAC manufacturers "undertook active and ongoing steps
to conceal the defect." 347 F. Supp. 3d at 1190, 1197. The court found those alle-
gations conclusory and explained that the plaintiffs needed to "identify those 'active
and ongoing steps'," such as by explaining how each defendant "accomplished the

fraudulent concealment." *Id.* And the *Hummel* and *Fickes* courts concluded that allegations that the defendant "intentionally concealed the defective nature" of a product or "knowingly concealed the defect," respectively, were insufficient to state a FDUTPA claim. *Hummel*, 2015 WL 12843907, at *3; *Fickes*, 2012 WL 13103180, at *2. Instead, more is required. *See Costa v. Whirlpool Corp.*, C.A. No. 24-188 (MN), 2025 WL 885245, at *6 (D. Del. Mar. 21, 2025) (dismissing FDUTPA claim).

Beyond generalized allegations that Electrolux "failed to disclose material facts" in writing or made omissions on its website and in print, Plaintiff does not allege "how [Electrolux] accomplished the fraudulent concealment." *Koski*, 347 F. Supp. 3d at 1197. (Compl. ¶¶ 102–103.) Absent further detail, her allegations that Electrolux "concealed the Defect" do not satisfy Rule 9(b). *Koski*, 347 F. Supp. 3d at 1197; *Fickes*, 2012 WL 13103180, at *2.

To the contrary, Electrolux disclosed the fact that the oven glass can break. Plaintiff's Use and Care Manual expressly warns that "[m]ost oven doors contain glass that can break" and warns consumers to avoid several actions that can expose their glass to damage. (Ex. 1 at 37.) And the very consumer reviews Plaintiff cites appear on Electrolux's brand website, where Plaintiff was able to find the reviews several years after they were posted. (Compl. ¶¶ 64–89.) Leaving negative consumer reviews up for consumers like Plaintiff to see is hardly conduct consistent with concealment. *See Costa*, 2025 WL 885245, at *6 (allegations that a manufacturer

"covered up the defect" were "implausible [ ] based on … the Complaint's other allegations," which included publicly-available reviews). Instead, the reviews Plaintiff cites not only demonstrate that her "Defect" theory is implausible, but also that Electrolux took no action to "conceal" information—and so, the fraudulent concealment and FDUTPA claims must be dismissed.[7]

### B.    Electrolux had no duty to disclose

Plaintiff's fraudulent-concealment and FDUTPA claims also fail because Plaintiff has not alleged a duty to disclose. Under Florida law, "concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose." *TransPetrol, Ltd. v. Radulovic*, 764 So.2d 878, 879 (Fla. Dist. Ct. App. 2000); *White v. Grant Mason Holdings, Inc.*, No. 17-13110, 741 Fed. App'x 631, 637 n.1 (11th Cir. 2018) (no reason why the "law on the duty to disclose differs in the FDUTPA context"). That duty arises when the plaintiff and defendant have a "fiduciary or other relation of trust or confidence," *TransPetrol*, 764 So.2d at 880, or when the defendant makes a voluntary partial disclosure, *Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 839–40 (Fla. 2022).

No duty was triggered here. First, Plaintiff never alleges that she had a

---

[7] Plaintiff also fails to plead knowledge, a required element of both fraudulent-omission and FDUTPA claims, for the reasons discussed at note 6. *See Hummel*, 2015 WL 12843907, at *4–5 (requiring "knowing concealment"); *Fickes*, 2012 WL 13103180, at *2 (similar).

fiduciary or confidential relationship with Electrolux. She admits she purchased her range from a third-party retailer (Compl. ¶ 47), and she never alleges that she spoke to Electrolux either before or after (*id.* ¶¶ 47–59). Such distant commercial relationships are not fiduciary in nature, *see TransPetrol*, 764 So. 2d at 880, and so, no duty to disclose arose.

Plaintiff's theory appears to be that a duty to disclose arose because Electrolux made "general affirmative representations about the quality, warranty, functionality, and durability of the Ovens." (*Id.* ¶¶ 162, 174.) But she identifies no specific statements that obliged Electrolux to disclose more. That failure to identify which statements could have caused her to be "misled" dooms the fraudulent omission claim. *Prentice*, 338 So. 3d at 841.[8]

### C.    Plaintiff cannot plead causation or reliance

For similar reasons, Plaintiff fails to plead the causation elements of her omission-based claims. Florida law is clear that fraudulent-concealment claims require a plaintiff to allege reliance. *See Prentice*, 338 So. 3d at 840; *TransPetrol*, 764 So. 2d at 880. While there is some disagreement over whether FDUTPA claims similarly

---

[8] Some cases suggest that a "seller" has a duty to disclose information not "equally within the ken" of a "buyer." *See Coffey v. WCW & Air, Inc.*, No. 3:17-cv-90-MCR-CJK, 2018 WL 4154256, at *4 (N.D. Fla. Aug. 30, 2018). Those cases rely on *Kitchen v. Long*, in which the seller knew a mule was worthless but told the buyer he had no information. 67 Fla. 72, 76 (1914). *Kitchen* is an illustration of, not an exception to, the rule that, "[t]hough a vendor may have no duty to speak, yet 'if he does assume to speak, he must make a full and fair disclosure." *Prentice*, 338 So. 3d at 839–40. As discussed in the main text, that rule does not apply here.

require reliance, at the very least, such claims require causation (which "overlaps with" reliance). *See Davis v. Powertel, Inc.*, 776 So. 2d 971 (Fla. Dist. Ct. App. 2000); *but see Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1339 (11th Cir. 2023) (Tjoflat, J., concurring in part) (critiquing *Davis* for adopting an incorrect reading of federal law); *Prentice*, 338 So. 3d at 838.

Here, Plaintiff must identify which of Electrolux's statements *caused* her to purchase (and overpay for) her range but fails to do so. When a plaintiff's theory is that a defendant "chose to speak and then did so incompletely and misleadingly," she must allege she "received, believed, and acted upon the statements that omitted the material information." *Prentice*, 338 So. 3d at 840. "No statements, no deception, no causation"—for both fraudulent concealment and FDUTPA claims. *Id.*; *In re NJOY, Inc. Consumer Class Action Litig.,* 120 F. Supp. 3d 1050, 1089 (C.D. Cal. 2015) ("[W]here a plaintiff has not seen or heard an allegedly deceptive advertisement, she cannot challenge it under the FDUTPA."); *Hall v. Sea World Ent., Inc*., No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *16 (S.D. Cal. Dec. 23, 2015) (similar).

Here, Plaintiff fails to identify any specific statements on which she relied. Her theory is that she "relied on … material omissions" (Compl. ¶ 174 (FDUTPA)) or would have behaved differently if she "had known about the Defect at the time of purchase" (*id.* ¶ 165 (fraudulent concealment)). But the Florida Supreme Court

rejected both of those theories in *Prentice*. "For one thing," it said, "the concept of reliance on a[n] … omission …  is unavoidably confusing and maybe even nonsensical." 338 So. 3d at 842. And a theory that the plaintiff "would have behaved differently" had she known some fact does not plausibly suggest reliance, because under such a theory, it does not matter whether the defendant *caused* the plaintiff's misapprehension, but only whether the defendant could *cure* it, which "is not reliance." *Id.* at 841.  Instead, Plaintiff must identify a statement that caused her to be misled—and she fails to do so here.

### D.    Plaintiffs' FDUTPA claim also fails because no actionable conduct occurred in Florida

Finally, Plaintiff's FDUTPA claim fails because it "applies only to actions that occurred within the state of Florida," and Plaintiff fails to allege any such actions with particularity. *Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012); *Beaver v. Inkmart*, LLC, No. 12-60028, 2012 WL 4005970, at *3 (S.D. Fla. Sept. 12, 2012). Here, while Plaintiff alleges she "purchased" her range in Florida, she does not allege that she spoke to Electrolux in Florida, or even that she saw a specific statement from which information was omitted in Florida (or anywhere else). (*See* Compl. ¶¶ 47–52.) Because Plaintiff has failed to plausibly allege, with particularity, any specific misconduct (i.e., omissions) occurred in Florida, her FDUTPA claim must be dismissed.

### III.   THE UNJUST ENRICHMENT CLAIM IS DUPLICATIVE

Plaintiff also alleges Electrolux "has been unjustly enriched" because it "received a benefit from Plaintiff … in the form of payment" which was "not legitimately earned" because the oven lacked a "warning." (Compl. ¶¶ 146–49.) Plaintiff's unjust-enrichment claim fails for two reasons.

First, to state an unjust-enrichment claim in Florida, a plaintiff must allege that she has no adequate remedy at law—but, if an express warranty covers the plaintiff's interactions with the defendant, there is such a remedy. *See David*, 629 F. Supp. 2d at 1324. As such, the unjust-enrichment claim must be dismissed.

Second, the unjust enrichment claim should also be dismissed because it is duplicative of other claims. Unjust enrichment claims "predicated on the same set of allegations supporting … claims under … FDUTPA" are subject to dismissal. *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005); *Licul*, 2013 WL 6328734, at *7. Plaintiff's unjust-enrichment claim is just that: it relies on the same set of allegations that underly the fraudulent-concealment and FDUTPA claims. (*See* Compl. ¶¶ 145, 147.)

## IV. PLAINTIFF DOES NOT HAVE STANDING TO SEEK DECLARATORY OR INJUNCTIVE RELIEF

Finally, Plaintiff seeks "declaratory relief" because "Defendant has acted or refuses to act on grounds that apply generally to the class, so that final injunctive [or] … declaratory relief is appropriate." (Compl. ¶¶ 196–97.)

Plaintiff does not specify the law under which her claim for declaratory relief arises. (*See* Compl.)[9] Federal courts award such relief under the Declaratory Judgment Act ("DJA"), which provides that "a declaratory judgment may only be issued in the case of an 'actual controversy.'" *Mid-Continent Cas. Co. v. G.R. Constr. Mgmt., Inc.*, 278 F. Supp. 3d 1302, 1305 (M.D. Fla. 2017); 28 U.S.C. § 2201(a). The DJA requires a *continuing* controversy that is not "conjectural, hypothetical, or contingent:" "the remote possibility that a future injury may happen" is not sufficient. *Id.* So too for injunctive relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Here, Plaintiff alleges she "would purchase another Oven *provided that* the common Defect is fixed going forward." (Compl. ¶ 113 (emphasis added).) But allegations that something would happen "provided that" something else happens are "conjectural." *Williams v. Reckitt Benckiser, LLC*, 65 F.4th 1243, 1256 (11th Cir.

---

[9] Plaintiff parrots Rule 23(b)(2), but whether she meets that procedural rule's standard is distinct from whether she is entitled to declaratory relief.

2023); *see also Volinksy v. Lenovo (U.S.) Inc.*, No. 8:23-cv-00250-KKM-NHA, 2024 WL 1299315, at *4 (M.D. Fla. Mar. 27, 2024). In *Williams*, the plaintiffs alleged they were deceived because the supplements they purchased did not improve brain performance, but sought injunctive relief on the grounds that, if defendants developed products that *did*, plaintiffs would buy them. 65 F.4th at 1255. The Eleventh Circuit found such allegations "plainly insufficient" to justify injunctive relief. *Id.* at 1256.

So here, Plaintiff's assertion is that she would purchase a product that does not yet (according to her allegations) exist, and that, if she did buy that hypothetical product, she would be harmed. Such a harm is purely "conjectural" and does not justify injunctive or declaratory relief. *Id.* Further, the harm Plaintiff alleges—overpayment because she was allegedly *deceived*—is especially unlikely to recur, because she now knows the supposed truth. *See id.* at 1255. Because Plaintiff fails to plead a future injury, Count VII, and the request for injunctive relief, should be dismissed.[10]

---

[10] The claim for declaratory relief should also be dismissed because it is a procedural device. Either the other claims will be dismissed, and the declaratory-relief claim will fail because it depends on the same allegations, *Eveillard v. Nationstar Mortg. LLC*, No. 14-CV-61786, 2015 WL 127893, at *9 (S.D. Fla. Jan. 8, 2015), or the other claims will proceed, and a declaratory judgment will not be necessary to ensure relief, *Guzman v. Penn-America Ins. Co.*, Case No. 2:24-cv-01146-JLB-NPM, 2025 WL 1018424, at *1 (M.D. Fla. Apr. 4, 2025).

## CONCLUSION

For these reasons, the Court should dismiss the Complaint in its entirety.

## LOCAL RULE 3.01(G) CERTIFICATION

Counsel for Electrolux conferred with counsel for Plaintiff via teleconference and e-mail, who has advised that Plaintiff opposes this motion.

## CERTIFICATE OF SERVICE (CM/ECF)

**I HEREBY CERTIFY** that on June 10, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice of service to counsel of record.

/s/ *Ethen R. Shapiro*
Ethen R. Shapiro (FBN 669881)
Rachel E. Eilers (FBN 1019587)
Hill Ward Henderson
P.O. Box 2231
Tampa, FL 33601-2231
(813) 221-3900
(813) 221-2900 – facsimile
Ethen.Shapiro@hwhlaw.com
Rachel.Eilers@hwhlaw.com

Galen D. Bellamy (*pro hac vice* pending)
Juan S. Ramirez (*pro hac vice* pending)
Iva Velickovic (*pro hac vice* pending)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
*Attorneys for Defendant*
*Electrolux Consumer Products, Inc.*